IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

PATRICIA ADAMS                                                                                            PLAINTIFF

V.                                         CASE NO. 12-CV-4102

TRUMAN ARNOLD COMPANIES                                                             DEFENDANT

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment (ECF No. 32) filed by Defendant Truman Arnold Companies. Plaintiff Patricia Adams has filed a response. ECF No. 36. Defendant has filed a reply. ECF No. 37. The matter is ripe for the Court's consideration.

## I.  BACKGROUND

The Court states the facts in the light most favorable to Plaintiff Patricia Adams. Adams was hired by Truman Arnold Company ("TAC") to work at its Road Runner convenience store "No. 2" in Texarkana, Arkansas, on two separate occasions: (1) beginning May 24, 2004; and (2) beginning February 15, 2008. When Plaintiff was hired the second time, the manager of the store was John Kelly. Adams alleges that Kelly sexually assaulted her in May 2011 in the car wash of the Road Runner. Adams did not immediately report the alleged sexual assault.

On July 26, 2011, another employee, Teresa Jones, complained to TAC's human resource officer of sexual harassment by Kelly. The human resources officer, Denny Peterson, began an immediate investigation into the matter involving Jones. Kelly was terminated on July 27, 2011. The next day, Adams reported to Peterson that Kelly had sexually assaulted her in May 2011.

On September 20, 2011, there was a cash handling incident involving Adams. Elsie Washington, assistant manager, reviewed videotape and certain paperwork regarding the incident. Washington concluded that Adams had committed theft while working as a cashier. Prior to this incident, Adams had received three written warnings regarding improper cash handling and violations of company policies regarding cash. On September 22, 2011, TAC terminated Adams's employment.

TAC maintained a written sexual harassment policy that all employees were provided upon employment. The TAC anti-harassment policy states, in the section entitled "Employee Responsibility," that an employee who believes that they have been subjected to harassment of any type is to report the incident "immediately to your direct supervisor or to the human resources representative at 903-794-3835." ECF No. 33-1, p. 10. The policy also identifies two other persons (the company president and a company vice-president) who could be contacted for the reporting of harassment. ECF No. 33-1, p. 11. The policy declares that each allegation will be investigated. ECF No. 33-1, p. 11. The policy further expresses that, under no circumstances, will any employee who reports an alleged incident of harassment be subjected to reprisal or retaliation of any kind. ECF No. 33-1, p. 11. On the dates of her first and second hire, Adams acknowledged receipt of TAC's harassment policy, admitted that she understood what constituted sexual harassment, and acknowledged that she should report any incident of sexual harassment immediately. ECF No. 33-1, pp. 1-4.

After receiving a right to sue letter, Adams filed the present suit on August 29, 2012. In her First Amended Complaint (ECF No. 23), Adams makes the following claims against TAC: sexual

harassment and retaliation; outrage; battery; defamation; and negligent hiring, supervision, and retention.[1]  TAC asserts that it is entitled to summary judgment on all of these claims.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Under this standard, the inquiry is not whether the evidence favors one side or the other, but "whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  When considering a summary judgment motion, the Court "must view the evidence 'in the light most favorable to the nonmoving party.'" *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 445 (8th Cir. 2008) (quoting *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997)).  To defeat a motion for summary judgment, however, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." *Bell*, 106 F.3d at 263 (8th Cir. 1997).  "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Binkley v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th Cir. 2010).

---

[1]Adams has abandoned her claims for outrage, battery, and defamation.  ECF No. 36, p. 12.  Thus, TAC is entitled to summary judgment on these claims.

### III.  DISCUSSION

Adams makes two federal claims against TAC: a Title VII hostile work environment claim and a Title VII retaliation claim.  Adams also makes corresponding state law claims pursuant to the Arkansas Civil Rights Act.[2]

**A.  Hostile Work Environment Claim**

Adams alleges that TAC subjected her to sexual harassment in violation of Title VII of the Civil Rights Act of 1964 and the Arkansas Civil Rights Act.  TAC, however, maintains that summary judgment should be granted in its favor because it is entitled to its *Ellerth-Faragher* affirmative defense for supervisor harassment.  Adams argues that TAC is not entitled to this affirmative defense and that material fact questions preclude summary judgment.

Title VII prohibits employers from discriminating against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]"  42 U.S.C. § 2000e-2(a)(1).  "Sexual harassment may violate Title VII where it is sufficiently 'severe or pervasive' so as to create an 'objectively hostile or abusive work environment.'"  *Crawford v. BNSF Ry. Co.*, 665 F.3d 978, 983 (8th Cir. 2012) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).  An employer is vicariously liable for a supervisor's actionable sexual harassment of employees unless the employer can establish that it is entitled to the *Ellerth-Faragher* affirmative defense.  *Id*. (citing *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, 1195 (8th Cir. 2006)).  The affirmative defense is not

---

[2] The Arkansas Civil Rights Act "expressly instructs [courts] to look to federal civil-rights law when interpreting the Act."  *Island v. Buena Vista Resort*, 103 S.W.3d 671, 675 (Ark. 2003); Ark. Code Ann. § 16-123-105.  Accordingly, while TAC moved for summary judgment as to Plaintiff's claims pursuant to both Title VII and the Arkansas Civil Right Act, the Court's analysis for both will be conducted using the federal standards as encouraged by Ark. Code Ann. § 16-123-105.

available, however, "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270 (1998).

Here, Adams asserts that her termination two months after Kelly was fired and four months after the alleged harassment is the tangible employment action suffered that would make the *Ellerth-Faragher* affirmative defense unavailable to TAC. Adams, however, cannot prove that Kelly's harassment culminated in her termination. In other words, Adams cannot show a causal connection between her sexual harassment claim and her termination.

Adams reported that the alleged sexual assault occurred in May 2011. Kelly was terminated on July 27, 2011. Adams was terminated in September 2011. There is no evidence in the record that links the alleged sexual assault of Adams in May 2011 to her termination in September 2011. Kelly did not participate in the decision to terminate Adams, as TAC had already terminated Kelly's employment two months earlier.

Kelly issued two written warnings to Adams regarding improper cash handling in 2010. Adams argues that, because TAC relied on these warnings when making the decision to terminate her employment, the termination is linked to Kelly's alleged sexual assault victimizing Adams. The warnings issued by Kelly to Adams occurred in 2010, several months before the alleged sexual assault victimizing Adams in 2011. Thus, the warnings issued by Kelly contained in Adams's personnel file are not linked to the 2011 alleged sexual assault. Accordingly, the warnings issued by Kelly do not support the proposition that the May 2011 alleged sexual assault culminated in Adams's September 2011 termination.

In sum, approximately four months passed between the date of the alleged assault and the date of Adams's termination. During this four months, in July 2011, Kelly's employment was terminated. Without any evidence connecting the assault to Adams's termination, the Court finds that Adams cannot show that the alleged sexual assault culminated in her termination. Accordingly, the *Ellerth-Faragher* defense is available to TAC.

To establish the *Ellerth-Faragher* affirmative defense, an employer must show the following: (a) that it exercised "reasonable care to prevent and correct promptly any sexually harassing behavior;" and (b) that the employee "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).

The first element of this defense has two prongs: prevention and correction. *Brenneman v. Famous Dave's of America, Inc.*, 507 F.3d 1139, 1145 (8th Cir. 2007). "Under the prevention prong, the employer must have exercised reasonable care to prevent sexual harassment." *Id*. "Under the correction prong, the employer must have promptly corrected any sexual harassment that occurred." *Id*.

Here, TAC has demonstrated that it exercised reasonable care to prevent sexual harassment. TAC has a facially valid anti-harassment policy, and it distributes a copy of this policy to all employees. The policy has a non-retaliation provision and lists four individuals who may be contacted in the case of harassment. Although having an anti-harassment policy is not in itself enough to show that TAC exercised reasonable care, the distribution of a valid policy provides compelling proof of preventing sexual harassment. *Id*. TAC's policy was visibly posted with contact information at TAC's Road Runner store No. 2.

Adams signed an acknowledgment form stating that she received a copy of the anti-harassment policy, that she understood what behaviors constituted sexual harassment, and that she understood that she was to immediately report any incidents of sexual abuse. ECF 33-1. Adams admits that "she has some familiarity with the sexual harassment policy." ECF No. 36-14, p. 2. Further, Adams testified that in September 2010, she directed a co-employee to report a claim of sexual harassment to TAC's human resource officer pursuant to the anti-harassment policy. Accordingly, the Court finds that TAC exercised reasonable care to prevent sexual harassment.

The Court finds that TAC has also met the correction prong. On July 26, 2011, Teresa Jones reported that she had been sexually assaulted by Kelly. TAC terminated Kelly's employment the next day. On July 28, 2011, when Adams reported that Kelly had sexually assaulted her two months earlier, TAC had already terminated Kelly's employment in response to Jones's complaint. Thus, it appears that the utilization of TAC's anti-harassment policy worked. Accordingly, the Court finds that TAC acted promptly to correct the sexually harassing behavior.

Adams asserts that TAC did not enforce it's anti-harassment policy because it failed to take corrective action against Kelly for incidents of alleged sexual misconduct occurring in the years prior to the allegations in this lawsuit. The Eighth Circuit, however, has addressed and rejected a similar argument in *Crawford v. BNSF Ry. Co*. 665 F.3d 978 (2012). In *Crawford,* appellants argued that BNSF's policy was not actually enforced and that BNSF only took minimal action, such as counseling, after learning of other employees' complaints about a certain supervisor. *Id*. at 983. The Eighth Circuit found that, in each of the assertions, "BNSF investigated these incidents and took action in response," which included "meeting with [the supervisor and] counseling him on appropriate work behavior[.]" *Id.* at 984. The Eighth Circuit went on to state that it "afford[s] an

appropriate degree of deference to business judgment where the records show that the employer conducted a reasonable investigation in good faith." *Id.* (internal quotations omitted). Finally, the Eighth Circuit stated that the "fact that appellants would have desired harsher responses does not make BNSF's otherwise valid policy ineffective." *Id.*

Here, the record reveals that three other sexual harassment complaints had been lodged against Kelly prior to the complaint that resulted in his termination. In particular, one employee alleged that Kelly sexually harassed her in April 2004, seven years before the alleged assault in this case. TAC's human resources officer, Denny Peterson, immediately investigated the complaint and compiled an investigative file amounting to at least eleven pages. Further, Peterson questioned Kelly about the allegation, Kelly denied the allegation, and she counseled Kelly that he was to conduct himself professionally and that he was not to retaliate against any employee or witness. The record also shows that Peterson reported the matter to higher management, and Kelly was required to undergo additional training. The investigative file also contains additional notations wherein the complaining employee later expressed that everything was fine between her and Kelly and that she had even invited Kelly to her wedding. In sum, the record shows that an investigation occurred, Kelly denied the allegation, and he was counseled regarding the allegation. Kelly received additional training, the harassment stopped, and the employee expressed no further issues.

In September 2010, two TAC employees accused Kelly of sexual harassment, and Peterson conducted a multi-day, multi-party investigation. Adams directed one of these employees to report the harassment to Peterson. When Peterson interviewed five other employees, including Adams, all of them said nothing inappropriate had ever occurred to them. In her interview, Adams identified one of the complainants as a "bad employee." Adams also denied that she had seen and failed to

corroborate the existence of an inappropriate picture that Kelly allegedly texted to one of the complainants.

Kelly was summoned to TAC's offices, the allegations were explained to him, he denied the allegations, and he was told to take three days off. When he returned to work, he apparently resigned. Again, the record shows that TAC's policy was in place, the employees utilized the policy, TAC conducted a prompt investigation, Kelly was counseled, TAC took action, and the alleged harassment stopped. It appears that TAC rehired Kelly on or around October 22, 2010. Certain conditions were placed upon him for continued employment. These conditions included ongoing supervisory training, monitoring, and a requirement that another manager or supervisor be present when future counseling occurred. *Crawford*, 665 at 984.

Adams asserts that TAC "did nothing to curb [Kelly's] behavior." The Court, however, is required to "afford an appropriate degree of deference to [the] business judgment" contained in TAC's records showing in each instance: (1) an investigation; (2) a confrontation and/or counseling with Kelly; and (3) action taken ending the alleged harassment. *See id*. Adams may disagree with the outcome of each of the prior investigations, but the fact that she would have desired harsher responses to Kelly's behavior does not make TAC's otherwise valid policy ineffective. *See id.* Accordingly, the Court cannot find that TAC failed to enforce its anti-harassment policy.

The Court now considers the second prong of the *Ellerth-Faragher* affirmative defense, which is whether the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. Extended delays in reporting harassment without credible explanation have been considered unreasonable failures to avoid harm. *Weger v. City of Ladue*, 500 F.3d 710, 724 (8th Cir. 2007).

Here, Adams waited two months before she reported the alleged sexual assault to TAC. She asserts, however, that a "jury should decide [whether this delay] was reasonable in light of Kelly's threats, Adams's condition, and the overall ineffectiveness of TAC's policy." ECF No. 36, p. 10. Subjective fears of confrontation, unpleasantness, or retaliation "do not alleviate the employee's duty . . . to alert the employer of the allegedly hostile environment." *Weger,* 500 F.3d at 725. A plaintiff must demonstrate a "truly credible threat of retaliation." *Id.*

In a written report of the incident, Adams alleges that Kelly told her that she would be fired if she didn't perform a specific sex act on him. There is no evidence, however, that Kelly specifically threatened retaliation if she were to report the incident. Further, Adams offers no evidence to show that any subjective fear of retaliation was either genuine or reasonable. Two months passed between the alleged assault and Kelly's termination, and Adams makes no mention of any specific threats of retaliation that occurred during this time. TAC's anti-harassment policy contained an anti-retaliation provision, and there is no evidence that any TAC employee has ever been terminated for reporting a sexual assault or sexual harassment. *See Crawford*, 665 F.3d at 985 (stating that the "record is devoid of any evidence of prior retaliation or threats of retaliation by [the supervisor] for reporting harassment."). The fear of retaliation is not generally a proper excuse for failing to report sexual harassment. *Adams v. O'Reilly Automotive, Inc.*, 538 F.3d 926, 932-33 (8th Cir. 2008).

Adams states that she did not report the incident because of the trauma of the assault and that a diagnosis of PTSD prevented her from reporting. Adams, however, has offered no objective evidence of her PTSD diagnosis and no objective evidence linking this diagnosis to the alleged sexual assault. The evidence is too conclusory and speculative to overcome the unreasonableness

of her two-month delay in reporting the harassment. Moreover, the Eighth Circuit has recognized the "great psychological burden it places on one who is already the victim of harassment" to be required to report the incident, and it has determined the balance to be in favor of requiring reporting if the "employee wants to impose vicarious liability on the employer and collect damages[.]" *Weger,* 500 F.3d at 724-25 (8th Cir. 2007) (internal citations and quotations omitted). Accordingly, the Court finds that Adams "unreasonably failed to take advantage of any preventative or corrective opportunities" provided by TAC or "to avoid harm otherwise." *See Crawford,* 665 F.3d at 985. Having found that TAC satisfies each element of the *Ellerth-Faragher* affirmative defense as a matter of law, the Court grants TAC's Motion for Summary Judgment as to Adams's hostile work environment claim pursuant to Title VII and the Arkansas Civil Rights Act.

### B. Retaliation Claim

Title VII prohibits retaliation against employees who have acted to vindicate their statutorily protected rights by reporting harassment in the workplace. *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012). To establish a prima facie case for retaliation, a plaintiff must show: (1) that she engaged in protected conduct; (2) that she suffered a materially adverse action that would deter a reasonable employee from making a charge of employment discrimination; and (3) that there is a causal connection between the protected activity and the adverse action. *Id*. If the plaintiff establishes a prima facie case, the employer may rebut the resulting presumption of discrimination by articulating a legitimate, non-retaliatory reason for the adverse employment action. *Id*. at 857. Finally, if the employer proffers a legitimate non-retaliatory reason, the plaintiff may attempt to refute the asserted reason as mere pretext. *Id.*

Adams claims that the termination of her employment on September 22, 2011, was an act of illegal retaliation for opposing unlawful discrimination. Adams, however, has presented no evidence of a causal connection between her sexual harassment reporting and her termination. Moreover, the Eighth Circuit has found that a period of two months cannot as a matter of law justify the finding of a causal link. *Kipp v. Missouri Highway and Transp. Com'n*, 280 F.3d 893, 897 (8th Cir. 2001). Accordingly, the Court finds that Adams cannot make out a prima facie case of retaliation and grants TAC's Motion for Summary Judgment as to her claims for retaliation pursuant to Title VII and the Arkansas Civil Rights Act.

### IV.  CONCLUSION

For the reasons stated above, the Court finds that TAC's Motion for Summary Judgment (ECF No. 32) should be and hereby is **GRANTED** as to Adams's sexual harassment and retaliation claims pursuant to Title VII and the Arkansas Civil Rights Act as well as her state law claims of outrage, battery, and defamation. Accordingly, these claims are **DISMISSED WITH PREJUDICE**.

With the dismissal of the federal claims upon which subject matter jurisdiction is based, the Court, exercising its discretion after a review of the relevant factors, is persuaded that the remaining pendent state claims of negligent hiring and negligent supervision/retention should be and hereby are **DISMISSED WITHOUT PREJUDICE**. *See* 28 U.S.C. § 1367(c). Adams may pursue these claims in the appropriate state court forum. The Court will issue a Judgment of even date consistent with this Opinion.

**IT IS SO ORDERED**, this 26th day of January, 2015.

/s/ Susan O. Hickey  
Susan O. Hickey  
United States District Judge